**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

JAMES CASEMAN,

         Plaintiff,

   v.

SILVER STATE SCHOOLS CREDIT
UNION,

         Defendant.

Case No. 2:17-cv-00140-RFB-PAL

**<u>ORDER</u>**

## I.    INTRODUCTION

Before this Court comes Plaintiff James Caseman ("Plaintiff")'s Motion for Summary Judgment (ECF No. 28) and Defendant Silver State Schools Credit Union ("Defendant" or "Silver State")'s Motion for Summary Judgment (ECF No. 32). For the reasons stated below, Plaintiff's Motion is denied, and Defendant's Motion is granted.

## II.    PROCEDURAL BACKGROUND

On January 16, 2017, Plaintiff filed his original Complaint. (ECF No. 1). Defendant filed a Motion to Dismiss on March 3, 2017. (ECF No. 11). Responses were due on March 17, 2017. On March 17, 2017, Plaintiff filed a First Amended Complaint with Jury Demand. (ECF No. 12). Plaintiff alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq., and requests declaratory relief under 28 U.S.C. § 2201. Defendant filed an Answer to the Amended Complaint on April 3, 2017. (ECF No. 17).

The parties filed the instant Motions for Summary Judgment on November 30, 2017. (ECF Nos. 28, 32). Plaintiff filed his Response on December 20, 2017. (ECF No. 39). Defendant filed

its Response on December 21, 2017 (ECF No. 43). Replies were filed on January 3 and 4, 2018. (ECF Nos. 44, 47). On July 27, 2018, the Court held a hearing on the Motions and took the matter under submission. This Order now follows.

## III.  LEGAL STANDARD

### A.  Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014).

If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (quotation marks omitted).

## IV.  FACTUAL FINDINGS

### A.  Undisputed Facts

The Court finds the following facts to be undisputed. Plaintiff is a resident of Nevada and a customer of Defendant. Defendant is a credit union and furnisher of credit information under the FCRA.

On February 14, 2011, Plaintiff filed for Chapter 13 bankruptcy, including a second mortgage from Silver State in Schedule D of his bankruptcy petition, indicating that the mortgage was to be avoided. On April 13, 2011, the Bankruptcy Court entered an order "stripping off" the Silver State mortgage, which was to be avoided "upon completion and/or discharge of the Debtors'

Chapter 13." On June 15, 2016, after satisfying his obligations under the confirmed Chapter 13 plan of reorganization, Plaintiff earned a discharge in the bankruptcy court, which signified the termination of Silver State's debt.

Shortly after the bankruptcy discharge, Silver State attempted to correct Plaintiff's account to display a zero balance in the Automated Universal Dataform ("AUD"), a system designed to send furnisher updates to consumer reporting agencies ("CRAs"). The AUD is hosted by a broader platform called "e-Oscar" used by furnishers and CRAs. There are notes in the file for Plaintiff's account which reflect actions taken on his account, including the attempted AUD update following Plaintiff's bankruptcy discharge. In a note dated July 6, 2016 at 12:53pm, an employee of Silver State, Tracy Meyer ("Meyer") wrote: "SUBMITTED AUD THRU EOSCAR FOR BOTH MICHELE & JAMES TO REPORT BK13 DISC[HARGE], PAID/ZERO BAL[ANCE] . . . ." In the course of this litigation, non-party CRA Innovis confirmed that on July 6, 2016 it did receive an AUD via e-Oscar which updated Plaintiff's Silver State account to reflect that it was discharged/completed through bankruptcy Chapter 13 with a balance of $0 and a past due amount of $0.

Plaintiff pulled a copy of his Equifax consumer disclosure on August 31, 2016, in order to determine if his reporting was accurate or if anyone was using his credit information. Despite the attempted updates Silver State made via e-Oscar in July 2016, Plaintiff discovered on the August 31, 2016 disclosure that Silver State reported that his account still showed a $52,005 balance, which should have been $0 in light of the bankruptcy discharge. Therefore, on or about November 22, 2016, Plaintiff disputed his information with Equifax, pointing out that the $52,005 balance was incorrect and requesting that it be deleted.

On or around December 8, 2016, Equifax notified Silver State of the dispute by forwarding the same to Silver State via an Automated Credit Dispute Verification ("ACDV") on e-Oscar. An ACDV is the only way Silver State receives notification of consumer disputes from CRAs like Equifax. Equifax also sent to Silver State Plaintiff's dispute letter, Equifax disclosure, and identifying information.

As a matter of typical practice, once Silver State completes its investigation of a consumer's account following a dispute, Silver State sends back an ACDV response to the CRA who originally sent the ACDV in question. To respond to credit disputes, Silver State relies on a nine-page internal document called a "Lending Manual." Silver State also refers to an industry-wide resource known as the Credit Reporting Resource Guide ("CRRG"). Along with providing guidance regarding proper reporting in many scenarios, the CCRG contains a list of industry-specific codes, known as the "Metro 2," which Silver State uses to respond to ACDV responses for accounts included in bankruptcy. With regard to Plaintiff's account, Silver State followed these same practices.

On or around December 13, 2016, Trans Union received a carbon copy of the ACDV that Silver State provided to Equifax. The carbon copy was sent by Equifax to Trans Union via e-Oscar, as industry practice was for the CRA that received the initial dispute from the consumer to send a ACDV carbon copy from the furnisher, to the other CRAs. Based on the carbon copy, Trans Union was notified that Plaintiff disputed the account status, payment history, and payment rating shown in his account, as reported by Equifax. Silver State included the following information in the carbon copy: as of September 3, 2016, Silver State reported Plaintiff's debt with a $0 balance, date closed of 12/23/2010, with pay status of "account included in bankruptcy," and a remark that stated "Chapter 13 Bankruptcy." The carbon copy represents Silver State's response requesting certain updates to the account, including a request to change the current account balance from $52,005 to $0. Silver State used Metro 2 codes as listed in the CRRG in conveying the above information that was included on the carbon copy.

Trans Union received the ACDV from Silver State and understood that Silver State was seeking to correct the credit report for the Plaintiff. The ACDV clearly indicates that Plaintiff no longer has a delinquent account with Silver State and that the debt was discharged in bankruptcy. However, Trans Union's internal policies, procedures, and software system logic would not allow the requested updates. Thus, Trans Union rejected the update specified in the carbon copy because it did not comport with Trans Union's policies. According to Trans Union, Silver State attempted to change the date of first delinquency from 6/1/2010 to 12/23/2010, which ran against a Trans

Union policy of not altering the date of first delinquency when a furnisher requests the change from an earlier to later date. Silver State also attempted to change the interest to report an account status of "13," which indicated "paid/closed zero balance," while also reporting an account rating of "BK," which indicated that an account was included – but not discharged – in bankruptcy. Trans Union's system logic could not report Plaintiff's account with Silver State as both pending in bankruptcy and be paid and closed with a zero balance. Pursuant to Trans Union's internal policies, when a carbon copy reinvestigation contains one of the two errors specified above, no updates are made to the account and Trans Union takes no further action with respect to the carbon copy and, importantly, Trans Union does not notify the consumer or the furnisher that it is not making the suggested correction. Trans Union therefore made no updates to Plaintiff's account and continued to report Plaintiff's account with a $52,005 balance, instead of the $0 balance it should have reported. Defendant never received a dispute from Trans Union regarding Plaintiff's account.

In early January 2017, Plaintiff went to Heating & Air in the hopes of obtaining credit to fix his broken air conditioner. Heating & Air pulled an CBCInnovis "trimerge" report ("CBCInnovis report") which aggregates credit information from Experian, Equifax, and TransUnion. Non-party CBCInnovis is a wholly-owned subsidiary of CBC Companies, Inc. Innovis is a distinct, wholly-owned subsidiary of CBC Companies, Inc. With respect to Plaintiff's Silver State account, Innovis did not provide consumer credit information regarding Plaintiff to CBCInnovis. Silver State did not directly provide any information to CBCInnovis. On the CBCInnovis report, Trans Union transmitted Plaintiff's unchanged information, including the $52,005 balance on his now-discharged Silver State second mortgage.

Plaintiff testified that he has suffered actual damages in the form of out-of-pocket expenses for mailing and copying. Plaintiff has suffered a denial of credit on the terms he wanted at Heating & Air – which was zero interest for a year if he paid back the entire amount – and this denial forced him to fix his air conditioner with $3,100 in personal savings. The unexpected deficit in Plaintiff's modest savings left him with only about $2,200 left in his savings account. This in turn made his subsequent work-related move from Las Vegas to Oregon stressful – as he was worried that he would run out of money and be unable to successfully move his family out of state. To cover the

deficit left by the $3,100 out-of-pocket cost, Plaintiff was forced to borrow money against his 401k, which he has not been able to pay back.  He was also forced into the uncomfortable position of asking his mother for a loan.

## V.  DISCUSSION

### A.  Liability Under the Fair Credit Reporting Act

"Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, in 1970 'to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009) (citing Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 (2007)). "As an important means to this end, the Act sought to make 'consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy.'" 15 U.S.C. § 1681(a)(4). Gorman, 584 F.3d at 1153.

"The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements. However, § 1681s-2 limits this private right of action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a CRA." Id. at 1154 (citations omitted); see also Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059–60 (9th Cir. 2002) ("That with these words Congress created a private right of action for consumers cannot be doubted. That right is to sue for violation of any requirement "imposed with respect to any consumer.")

15 U.S.C. § 1681s-2(b) provides for the duties of furnishers of information upon notice of a dispute. 15 U.S.C. §§ 1681s-2(b) provides in relevant part:

(1)   In general. After receiving notice pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
(A)  conduct an investigation with respect to the disputed information;
(B)  review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)];
(C)  report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

    (i)  modify that item of information;

    (ii)  delete that item of information; or

    (iii)  permanently block the reporting of that item of information.

A furnisher may be held liable for violation 15 U.S.C. § 1681s-2(b)(1) if it fails to conduct a reasonable investigation after being notified by a CRA of a consumer's dispute. Gorman, 584 F.3d at 1157. The question of whether an investigation was reasonable is typically left to the jury – however, summary judgment of the reasonableness issue is appropriate to grant "when only one conclusion about the conduct's reasonableness is possible." Id. (citation and quotation marks omitted).

The FCRA provides for actual damages, punitive damages, and attorney's fees for willful violations of its statutory requirements. 15 U.S.C. § 1681n(a). For negligent violations, FCRA provides for actual damages and attorney's fees. 15 U.S.C. § 1681o(a). "The term 'actual damages' has been interpreted to include recovery for emotional distress and humiliation. . . . Moreover, no case has held that a denial of credit is a prerequisite to recovery under the FCRA." Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (citations omitted). "The FCRA does not impose strict liability, however . . . [a credit reporting] agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures." Id. at 1333 (citation omitted) (discussing in the context of an alleged violation of §1681e(b)).

"A plaintiff who alleges a 'bare procedural violation' of the FCRA, 'divorced from any concrete harm,' fails to satisfy Article III's injury-in-fact requirement." Syed v. M-I, LLC, 853 F.3d 492, 499 (9th Cir. 2017), cert. denied, 138 S. Ct. 447, 199 L. Ed. 2d 340 (2017) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016)).

**B. Reasonableness of Silver State's Procedures**

In this case, the only actual dispute between the parties is whether Silver State had an obligation to check or confirm that Trans Union had in fact made the correction noted by Silver State in the e-Oscar system. Thus, the remaining dispute concerns the reasonableness of Silver State's handling of Plaintiff's updated account information. Specifically, the parties dispute the reasonableness of (1) the manner in which Silver State conveyed updated Plaintiff's updated account information to Trans Union, and (2) Silver State not taking any action to follow up with Trans Union to ensure that the CRA reported accurate information.

Plaintiff seeks summary judgment on the grounds that Silver State did not reasonably carry out its duties under 15 U.S.C. § § 1681s-2(b)(1)(D) and (E). In Plaintiff's view, Silver State did not properly notify Trans Union of Plaintiff's discharged debt, which resulted in Trans Union continuing to report the debt and Plaintiff ultimately experiencing a denial of credit. Plaintiff in part relies on a Master Agreement[1] between Silver State and Trans Union as evidence that Silver State blatantly disregarded Trans Union's reporting policies; as Silver State did not correctly code the updated information, Silver State effectively provided no update at all. Plaintiff argues that, as a furnisher subject to FCRA, Silver State had the duty to ensure that inaccurate information was removed from all CRAs' reports. Plaintiff contends that these violations were willful, or at least negligent.

Silver State also requests summary judgment. Silver State contends that it complied with its statutory duty to forward the results of its reinvestigation to all CRAs, and argues that there is no dispute that all CRAs did in fact receive the results. Silver State further argues that the FCRA does not require information to be delivered in such a form that it is not rejected by the CRA. Additionally, Silver State argues in its Motion that, because Plaintiff did not inform Trans Union of a dispute, Silver State could not be held to a duty to investigate or correct the inaccurate information Trans Union continued to report.

---

[1] This document has been designated as confidential and is subject to a Protective Order. (ECF No. 18).

The Court agrees with the arguments advanced by Silver State. The Court finds that it is undisputed that, once informed about Plaintiff's dispute with Equifax's report, Silver State reinvestigated Plaintiff's account and determined that the $52,005 balance was discharged. There is also no dispute that Silver State conveyed the corrected information regarding Plaintiff's discharged debt to Equifax, with carbon copies sent to all other CRAs including Trans Union. It is also undisputed that Trans Union received Silver State's correction which was submitted pursuant to industry standard codes via the e-Oscar system. Trans Union also understood upon receiving Silver State's correction and ACDV that Silver State had found that Plaintiff's debt had been discharged in bankruptcy.

The Court finds that Silver State acted reasonably and fully complied with its statutory duties. Silver State sent information clearly identifying the updated information on Plaintiff's account, with the intention that all CRAs would update their reporting of Plaintiff's account. It is undisputed that Silver State had no knowledge that Trans Union would reject the updated information because it was not conveyed in a manner consistent with Trans Union's internal policies. Until the lawsuit was filed, Silver State was unaware that inaccurate information was still being reported by Trans Union, as the record indicates that Trans Union did not submit a dispute from Plaintiff to Silver State or otherwise indicate that the updates were not made. The Court is not persuaded by Plaintiff's reference to a contract between Trans Union and Silver State. Plaintiff does not cite to a particular provision of the contract which supports his argument that Silver State knew that it needed to convey updated account information in a particular manner to Trans Union. The statute does not require furnishers like Silver State to customize carbon copies or communications with CRAs, and there is no dispute that Silver State used industry-recognized Metro 2 codes to convey Plaintiff's updated account balance and status. Neither Plaintiff nor Trans Union contends that Trans Union did not understand Silver State's ACDV, or that it was somehow unintelligible – the document merely was not in compliance with Trans Union's own *internal* format.  The Court thus finds as a matter of law based upon the undisputed facts that Silver State acted reasonably during its investigation and reporting regarding the Plaintiff's dispute.

The Court declines to interpret the statute as suggested by Plaintiff to require that a furnisher would have an additional obligation to confirm and check that every single correction suggested by the furnisher was in fact corrected by the CRA. The Court does not find that Silver State had an obligation to understand in full the operation of Trans Union's internal reporting system, especially where Silver State sent information correcting inaccurate information in a clear format – which Trans Union understood but refused to incorporate. Additionally, the Court finds that Plaintiff raises no dispute to suggest that Defendant was aware of a general pattern of inaccurate information being reported by Trans Union or other CRAs after Defendant sent updated account information via e-Oscar. Moreover, the Court finds that Silver State was never made aware by Trans Union or any other party that corrected information provided by Silver State in a manner not in compliance with Trans Union's policies would be rejected by Trans Union, resulting in inaccurate information continuing to be reported. The Court does not find that reasonable procedure requires the furnisher to confirm in each and every instance that the CRA has properly assimilated and corrected information about a mistake where the furnisher has provided updated information in a clear and intelligible manner, and where the furnisher is not on notice that the CRA will reject corrected but non-conforming information.

The Court thus finds as a matter of law based upon the disputed facts that there can be only one conclusion in this case and that is that Silver State fully complied with its legal obligations as a furnisher under Section 1681 of FCRA.


**VI.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 28) is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Summary Judgment (ECF No. 32) is GRANTED.

/ / /

/ / /

The Clerk of Court is instructed to enter judgment accordingly and to close this case.

DATED this <u>30th</u> day of July, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**